The case today is 25-1236 and 25-1413, State of New York et al. v. Donald J. Trump et al. At this time, will counsel Steve Collins please introduce himself on the record to begin. Good afternoon, your honors, and may it please the court. My name is Brian Springer on behalf of the federal government. I'd like to try to reserve five minutes for rebuttal. Why don't you do three minutes. Thank you, your honor. This case began as a challenge to an OMB memo, and that was all that this case was about when plaintiffs filed their preliminary injunction motion. The district court nevertheless allowed plaintiffs to vastly expand and transform their challenge to cover a whole suite of funding decisions made by almost a dozen agencies across the executive branch after the government had filed its opposition to plaintiff's motion. That approach was both procedurally and substantively improper. With respect to the OMB memo that was the centerpiece of plaintiff's lawsuit, that memo was intended to be an interim measure to address the period of transition from one presidential administration to another. It was rescinded nearly ten months ago. Can I just ask you about this procedural point you make in your briefing? When I look at the record from the district court, it looks like between the time when the plaintiff filed their amended complaint, one day after the government filed the opposition to the plaintiff's motion for a preliminary injunction. Do I have that right? That's correct, your honor. Okay, and then eight days later the district court holds a hearing on the preliminary injunction, right? Yes, your honor. I think about a week later it held the PI hearing. So between that eight-day time period, why didn't the defendants challenge the amended complaint or file anything else or seek ways to sort of revise your opposition? And at the hearing itself, did you raise any arguments that the amended complaint was improper or did you make any arguments at that hearing that focused on the amended complaint? Sure, I mean a couple of responses to that. I think to the first question, you know, this was proceeding on a very quick timeline where briefs were kind of being filed very quickly. We filed our opposition, plaintiffs the next day amended their complaint and that was one day before they filed their replies. There was no real opportunity for the government to respond to this amended complaint. And then at the hearing itself, as we note in our brief, we include a quote. I believe it's from the transcript, docket number 164. One of the first things that the Department of Justice attorney said at the preliminary injunction hearing was that the plaintiffs were, for the first time, trying to expand the scope of their challenge way beyond the OMB memo that had been the focus of the briefing of the motion to cover up a mutiny. Did you object to their ability to do that? Your Honor, I read the way that this, you know, proceeded to be an objection to... You read it that way? Did the district court read it that way? Your Honor, the district court didn't specifically address this. Did they say, I object to you doing it? Your Honor, the first thing that the attorney said was that... I found out that they were. And they don't deny that they were. They said they were doing it based on the amended complaint. The question is whether the procedural objection you're raising now was raised to the district court. Your Honor, I think it was, and again... The basis for that is that they pointed... that government counsel pointed out that there had been an amended complaint that expanded the scope? Yeah, I mean, I think... If you re-answer my question, is that the basis for saying there was an objection lodged? Your Honor, I mean, the main objection that was made was the one that was at the hearing. Going back to my... Is the basis for you now saying that an objection to the expansion was made to the district court the reference to the fact that there was an expansion? Or is there something else at the hearing that's the basis for saying an objection was lodged? Your Honor, I think that what was said at the hearing, including one of the first statements that the Department of Justice made... What else is there besides that statement that is the basis for an objection having been lodged? Your Honor, I think there are several statements. But again, one of the first statements that he made was a statement that this was an expansion... I feel like I'm making a lot of progress. Counsel, can I ask you a different question? Judge Rickman, let me just finish on this. There was a statement made about an expansion. Are you saying that was an objection? Yes, Your Honor, that was an objection. Okay. Are you saying that anything else was an objection to the expansion? Your Honor, I mean, there are other statements that are similar that are made in the PI hearing about the idea that plaintiffs have expanded their case. Again, I think the whole way that this went was improper because plaintiffs filed their amended complaint after the government had opposed the motion. They could have filed the amended complaint earlier. This was what the scope of their challenge was. And the only way that they asked to have the district court look at it was in a footnote in their reply brief. You know, you can't raise arguments for the first time in a footnote in a reply brief. I mean, I think the way that this all unfolded, it's perplexing for the plaintiffs to say that the government forfeited this objection. Counsel, can I just, on the same topic, but just asking you to cite it a different way, I looked at that part of the docket that you referenced, and the way I understood it, and I'm wondering if there's anything else in the record you can point me to that suggests a different understanding, but the way that I understood that your predecessor counsel, or counsel before the district court, was communicating his concern was to really say to the district court, this just happened, we'd already filed our opposition, and therefore we haven't had as much opportunity as we would like to to respond to the new claims. I didn't read it as, so that's one thing to say to a judge that you're appearing in front of, we haven't had a full opportunity to prepare, versus we think that we're just, the amended complaint, and proceeding on the amended complaint for the purposes of a PI is just inappropriate, and we object full stop because we need to redo the entire proceeding. So I didn't read it that second way, but is there anything in the transcript that you think supports your reading rather than mine? I guess I think that this all gets wrapped into the same objection, that the idea is when a plaintiff files a preliminary injunction motion, it's based on the operative complaint at the time. The operative complaint at the time that the motion is still pending, the amended complaint. Yeah, and I think precisely for the reason that we have, no matter how much time in advance the amended complaint is issued. Yeah, I mean again, here it was... I understand it was, here it was eight days, wasn't 24 hours, which is consistent with what Judge Rickleman is saying, because you didn't have all the time in the world, and that's something you could point out to the district court, which is different than saying it would be improper procedurally to now consider the operative complaint to be the amended complaint. Sure, I mean we have cited to a Ninth Circuit case and Eleventh Circuit case that both suggest that in a context like this, where what you're supposed to look at is the complaint that was in effect at the time that the motion was filed, because the idea is we are moving on the current complaint to get relief pursuant to that complaint. And again, I mean I think even if you looked at the specifics here, the way this all unfolded, it was unfair, because it happened, you know, again, they filed the amended complaint after the government had opposed the motion, and didn't allow, there was no meaningful opportunity for the government to respond. I guess, counsel, what we're concerned about is if, and I understand this is not you, but if your predecessor counsel had been very clear to say, you know, it's the government's position now that this is entirely procedurally improper, the district court would have had a number of tools at its disposal to address that, could have required the plaintiffs to file a new motion for preliminary injunction, allowed full briefing on that, and it would have really remedied the concern that you're now bringing to us. And so I think, again, the question for us is, if that wasn't sort of pointed out very clearly to the district court, when the district court could have easily remedied it, why isn't it forfeited, as the plaintiffs have argued? Because that's exactly the point of those rules, as I'm sure you understand, is because the district court could quickly have addressed it, and based on what was said at the hearing, it just wasn't argued in the way that you're arguing it to us now. I mean, again, I think that this was clearly presented to the district court as a problem and that this was something that was raised in front of the district court as being an issue and not the way that this should proceed because, again, the briefs were very focused in the district court on the OMB memo question. I mean, I also think, you know, look, we're at a time where we've, many things have sort of transpired since the district court entered its preliminary injunction. I mean, I think a lot of the case from plaintiff's perspective, you know, likely isn't of much practical significance anymore, but I think the fact that the injunction is still in place is of huge, you know, it has huge problems with respect to these particular, you know, all the 23 agencies that are covered by the injunction. Some of your arguments about mootness are moot at the time that the injunction was issued. What you seem to be saying today is it's moot now. That's a different point, and I didn't read your briefs to be focused on that point so much, and there are all kinds of tools. If an injunction has no longer a need for it, you can go back and ask them to terminate the injunction, all kinds of things like that, none of which has been sought. But with respect to the issue of was it moot at the time of issuance, which is I thought what you were arguing to us so that it was null from the beginning, that has nothing to do with what you're saying now. Yeah, I completely agree. I think at the time that the district court entered its preliminary injunction, again, the focus of what was going on at the time was the OMB memo, and the OMB memo by that time had been rescinded. You said that was a name only. Your Honor, again, I think that that was not the right way to think about the issue. The question really was whether OMB was likely to reissue a memorandum like this. I don't know how he thought about it, though, and you have an injunction predicated on his factual determination that it was a name only and continued. Your Honor, I guess I just don't think that that's correct for a couple of reasons. I mean, I think that that is just a legal conclusion that's dressed up as a factual finding, and I don't think it's right to say that that is actually what was going on. When you say what was actually going on, that sounds factual. Your Honor, I'm sorry. You think it's impossible for something to be rescinded only in name? Your Honor, I think what is happening is that— How about you just answer my question. Do you think it is impossible to just rescind something only in name? Your Honor, I mean, I don't think it's impossible. And the way we would determine whether it was a name or not, wouldn't that be a factual inquiry? Your Honor, I think what the problem was with what the district court did is it was focusing on two different actions. If you focus just on the OMB memo itself, which again was the focus of what was happening in district court, the district court didn't ask the question of whether it was likely that OMB would put the memo back in place. And I think once we had gotten beyond— You didn't think that the directive had ceased? Your Honor, I think that what— Your Honor, I think that the way the district court was thinking about it was it was saying that agencies had done follow-on actions after the OMB memo and that he thought that those— Counsel, I think, again, to the factual findings point, and I appreciate your argument that there's aspects of this that are a legal conclusion, but the district court does say a few things that seem very factual, and just to get your response to them. So the district court concludes that it was a name only, as Judge Barron just pointed out, but also concludes that the quote-unquote rescission, which is how the district court talks about it, was a clear effort to meet the legal challenges and that the substantial effect of the OMB directive carries on. I'm quoting the district court. So why isn't that a factual finding in your view? And then the next question would be, if it is a factual finding, why would it be clearly erroneous? Your Honor, I mean, we have not contested the idea that part of the reason that OMB rescinded the memo was because there was some confusion on the ground and some confusion in how this was implemented again long ago. But I think the legal question that's being asked is whether that conduct is reasonably likely to recur such that the district court could address the legality. I think the court was looking at it as recurring because he concluded that it never actually ceased. That's why he said it was rescinded in name only and that in fact the substantial effect of it carried on. That was his actual finding in his order. As we pointed out in our state opinion, they relied on evidence such as the EPA internal communications saying that they were taking action post-rescission on the OMB directive. Your Honor, I want to take directly on the idea that, again, I don't think that plaintiffs have actually identified any particular final agency action here. I think they're pointing to... Now you're switching to a different thing, but I guess does that mean you don't have more to say about whether the reason it's not moot was a factual finding by the district court that the directives in the OMB memo, despite the formal rescission, remained in place? Your Honor, again, I think we have to separate out the two actions that we're talking about here because what we have argued is that with respect to the OMB memo itself, that challenge is moot because there's no reasonable likelihood that OMB will put in place another memo. It doesn't need to put in place another memo at this point because we're way down the road. Final decisions about multiple streams of funding have been made. We've moved into a new fiscal year where new funding decisions are going to be made. I understand. The premise of that argument is that the directives contained in the OMB memo ceased upon rescission of the memo. Is that right? Your Honor, I think that... I guess the answer is yes in the sense that the OMB... Okay, and the district court seems to be operating from a different premise based on its finding, and I didn't see anything in your brief challenging that finding by the district court, so that's where I'm just puzzled. Your Honor, I mean, I guess, again, I think that you have to sort of separate out the two questions, and I don't think that the plaintiffs have identified with any sort of particularity which is required by the Supreme Court's cases in National Wildlife Federation and in Norton to identify the specific and discrete agency action that they're challenging. That's a separate argument that doesn't relate to mootness. That's on the merits. But, Your Honor, I mean, I guess that is what I understood the district court to be pointing to as the part of the case, you know, that it was really focused on, as it was saying, I think agencies have come in and done this. I think to the extent that that's a factual finding, which I don't think is the right way to think about it, I think that's a legal conclusion, but even if you thought it was a factual finding, I don't think it's supported by the evidence here. I mean, I think it's striking... What do you think is... Just to make sure I understand your argument, what exactly do you think is not supported by the evidence? Your Honor, so I don't think that there is evidence to show, particularly that all 23 agencies that are being sued here... Again, I think the way that plaintiffs have... That they did what, Counselor? Sorry, I was just going to say, the way that plaintiffs have conceptualized their claim is that they've enacted some kind of... They've made a single decision and a broad decision to pause all funding, and I don't think that this record supports that there are decisions from all of these agencies making that. And, again, I think if you drill down on any particular example that the plaintiffs have raised... So, for example, I think that the plaintiffs have pointed to the National Science Foundation. If you drill down further on the National Science Foundation, we've pointed to one program that's covered with the National Science Foundation program that relates to grants that were issued for the purpose of science and technology and math education. And that funding program is funded by a lump sum appropriation, and the normal grant agreements allow the agency to both terminate and suspend funding. And I just don't see at any level that where the plaintiffs are challenging what the problem is. The reason is the nature of the... He gives a whole bunch of different reasons why he concludes there was a categorical freeze in place. I know you're contesting that now, but in the briefing it wasn't obvious to me what the basis for it is, other than pointing out that there were some discretionary grant funding programs. But that's not responsive to his conclusion that even if there were, there was an across-the-board categorical freeze as manifest by the speed in which it was instituted, the cutoff of funds simultaneously across all these things, the evidentiary support in some of the communications from agencies that they would rely on the OMB directive, et cetera. So the fact that there is such a program that would allow for discretion to be exercised isn't responsive to those factual findings. And in fact, the order doesn't prohibit termination of funds or termination of grants or non-spending of those funds based on a permissible discretionary exercise under those exact programs. What it prohibits is the kind of categorical across-the-board pause in funds for an indefinite period of time that the district court found happened at the time the injunction was issued. Sure. I mean, a few responses to that. I mean, I think there's a lot to unpack there. First of all, just to start with sort of the end piece of that, I mean, I do think that this injunction covers things that don't seem to be what the district court is talking about. I mean, I think the FEMA dispute is a perfect example of that, where the district court didn't do a real analysis to determine whether or not FEMA was allowed to put in place internal checks on payments before they go out. Instead, what the district court said was, I'm looking at this internal check. I think it's based on a memo that's based on another memo that traces back to an executive order. And although the district court didn't say that it is improper for the president to direct in his executive orders his subordinates to the extent that they have discretion to, you know, pause funding, that he still enjoined this internal check that FEMA had put in place to check for the money. So I don't think it's as contained as the district court is suggesting that it was. I mean, I do think at a minimum, there needs to be a clarification that the agencies are allowed to exercise their individual authorities in an individual case. Hasn't that clarification already been made? I thought the district court was very clear about that, that to the extent the agencies were making individualized determinations that they could make consistent with the law, they were absolutely allowed to do that, and that he was prohibiting only categorical freezes. Your Honor, the district court said that, and it's not, you know, entirely reflected in the text of the preliminary injunction itself. And also, I think the FEMA dispute is an example of something where it seems to be extending beyond what, you know, is supposed to be covered in this situation. Well, this is what I just keep struggling with, because it seems... I understand your point that you think certain issues are legal, and of course that's, you know, an argument that you can make, and I understand it, but the district court, I think, viewed things differently and made what to us seemed like factual fighting. So you say this freeze or pause is not categorical, and it's individualized in the FEMA example, for instance, and the district court concludes otherwise. It looks at the evidence in front of it, and it concludes that, in fact, it was a categorical pause. And so I guess what I'm trying to understand is, do you have any actual evidentiary basis for saying, assuming we think it's a factual fighting, do you have any argument you want to present to us about why it's clearly erroneous based on the evidence? Your Honor, I do think it's clearly erroneous. I mean, again, I think what's important... That argument in your brief? Your Honor, I think we did say in our brief that we don't think that there was a categorical pause here. But did you make an argument that it was clearly erroneous to find otherwise? Your Honor, I think we said that the district court was misconceiving what was going on. We didn't characterize it in exactly those terms. Because you were presenting it as a legal determination, which we're perfectly free to do as an argument, but the question Judge Rickleman's asking you is if we looked at it as a factual finding. What evidence do you have? I'm just asking the prior questions whether you even made that argument of any kind about the factual thing in your briefing to us. Your Honor, we did say we didn't think that this was how this played out. I mean, we didn't specifically couch it as a question of whether it was clearly erroneous because we didn't think it was a factual finding. You used the support that assertion that Judge Rickleman's asking. What would you identify as the evidence? Your Honor, I think what I would identify is, again, plaintiffs are talking about 23 different agencies. You would think that at a minimum they would have something from all 23 agencies. I don't see them discuss the vast majority of those agencies in their brief. Instead, they're focused on a couple select emails that went out that say, oh, this sort of funding has been paused. Again, I don't think that they're pointing to something where agencies made some single decision to categorically enact a pause, so I just don't think that they have identified... I thought what they were relying on in part and what the district court accepted was circumstantial evidence, which, of course, district courts are allowed to rely on as are parties, that the pauses, that plaintiffs experienced the pauses, came in at exactly the time that the LOD directive indicated that they should come in, and it was just too much to conclude that it was a coincidence. Are you saying that the district court can't rely on that kind of evidence in making its conclusions in a PI order? Your Honor, the normal way that an APA lawsuit plays out is that the plaintiffs come in and they say, here's a discrete action that an agency took that harmed me. I think that's exactly... The key insight, I think, from the National Wildlife Federation and the Norton cases is that plaintiffs have to come in and identify something because that imposes rigor and discipline on a court's assessment of the legality of the challenge decision, and I think that's exactly what's missing here, is that plaintiffs are sort of coming in and just saying, I think that this is what happened. But you're saying you can never challenge agency action unless it's formally written down, and that's not the law. No, I mean, I guess I don't necessarily think that that's true, and I think usually it is written down, and usually plaintiffs are coming in... No one thinks this is a typical case. It's a weird one, right? Because there was a rescission, and then the White House press secretary says, despite the rescission, the freeze is still there. So the district court then said, okay, and then, in fact, there were all these pauses in funding going on simultaneously. So it made a finding, and the D.C. Circuit case cited by your opponents, I forget the exact name, about the labor workforce rules and immigration, is a classic example of that, where on the books there's one thing, and off the books there's another thing. They treat that as final agency action. I don't know of any law that says that a court can't do that. No, I mean, again, I still don't think they have that here, and I think it would run into the problem that I've identified, which is about what the Supreme Court said in the National Wildlife Federation and Norton cases. And I think you can see that because, again, if you drill down on anything, every time we try to bring up a specific example in this context and say, you know, for example, here's a Department of Agriculture program that's about urban forestry, and sort of look at specific examples and show that within the context of that program there's discretion and lawful authority to pause it. And the injunction is, and so you can use that discretion. What you cannot do is an across-the-board categorical freeze without regard to what discretion there is. And the conclusion was that's what happened at the time that led to the request for the injunction at the time the injunction was issued. I guess I'm just not hearing an answer to that aspect of the district court's analysis. Yeah, I mean, I guess if you read the district court's decision to just be saying agencies are not allowed to enact a categorical pause without thinking about whether they're allowed to do so, I mean, I think that would be a different injunction than what we have here. Again, usually the way that an APA lawsuit plays out is you identify a very specific decision, and the remedy that you get at the end of the day is to set aside that decision and not allow it to be relied on. I think the injunction we have here goes far beyond that in saying that agency, you know, here's the type of conduct I think agencies can't engage in. They can't pause or, you know, impede funding. Based on a certain kind of judgment. It doesn't say you can never pause funding. But it also says based on... In addition to saying based on the OMB memo that I agree that the district court did find to be deficient, it also says based on executive orders that the president has issued that the district court has never said it's illegal for the president to direct his subordinates to exercise their discretion to the extent that they haven't in a certain way. So I don't see how the injunction could possibly cover that. I mean, I think that's what the problem is, is this injunction. With respect to the unleashing executive order, he said that to the extent permitted by law was just window dressing in context, given that there were formula grants, that the only way to understand that order was to be an impermissible directive. So, you know, I guess... Is that wrong? I guess it's a description. No, I think that's wrong. It's a description. I mean, a lot of what's covered by the unleashing executive order, it isn't formula grants. There's a bunch of discretionary grant programs there, and we've pointed to multiple in our brief that the EPA administers. Again, I mean, I think really what plaintiffs are trying to do here is abstract to a high level and challenge kind of an abstract idea about what the agencies are doing, not pointing to something that shows that that's actually what the agencies did. And the district court's injunction is overly broad in, you know, telling agencies they can't act a particular way. I'm conscious your time is running down. Could you turn briefly to your jurisdictional arguments, which I at first thought and understood you were making just in terms of the FEMA grants. Am I right in that, or are you making a broader jurisdictional argument? I think the point was that it sort of crystallized with respect to the FEMA grants that some of what the injunction covers are contractual disputes that belong in the court of federal claims. I think that's exemplified by the FEMA dispute, particularly maybe that it covers other things. Are there other grants here that you would say are contractual disputes such that we should worry about jurisdiction with regard to them? I think a large majority of the grants that are covered by this injunction are the sort of discretionary grants that look just like what was at issue in the Supreme Court's California decision and the follow-on NIH decision, such that to the extent that what the district court's injunction is actually doing is enforcing contractual agreements and forcing the government to pay. So it's taking that, and then neither of you have briefed the NIH case to us, which is the operative precedent I take now, right? That's correct, Your Honor. We did include it in our reply brief. It came out, I think, right before our reply brief. I'm not faulted. I didn't mean that this was a... It's just a timing point. But the NIH case involved a vacater, not an injunction, correct? I mean, it was an APA case that had reached final judgment. The remedy was vacater, not an injunction. I think that's correct, Your Honor, because I believe it reached final judgment. And here you've got an injunction rather than a vacater, even though both were asked for. I mean, Your Honor, I think the reason that that's true is that we're still at the... If we had reached a final judgment in this case, the right final judgment would be a set-aside remedy. And so I don't know why it matters whether or not we're sort of at the preliminary injunction stage. In both cases, our administrative procedure act are brought under the... This is exactly what I'm trying to figure out. As I read NIH, in vacater, I have a directive. Imagine, and I know you said there isn't a final discrete agency action, but if we take the district court's analysis to be that the discrete agency action that was final was the directive imposing the freeze that persisted notwithstanding the formal rescission of the OMB directive, and maybe the individual agency-level freezes of the same kind, taking that as true, under NIH, that can be subject to a vacater, right, in district court. Yeah, I mean, I think the distinction that Justice Barrett drew in her concurrence in NIH was between a vacater of individual grant terminations, so it was still a vacater, but that was still problematic because it was of... It was not a vacater of the guidance. It could be vacated. Right. She's a vacater of the guidance, and that could be done in district court. Your Honor, Justice Barrett... Sorry, I hadn't gotten to sort of the second part. She said there was a problem with it with respect to the individual grant terminations, but it may be okay. You could vacate the guidance on which future grant terminations might be based, but you could vacate that guidance going forward and get that relief in district court, correct? Well, I mean, again, obviously it was all decided in a state posture, but, yes, I mean, that's correct. So that was the distinction that she drew. Presumably, if the district court had done the same thing here, that also could be done in district court. What couldn't be done is adjudicating a termination that had already occurred based on that guidance. That has to be done in the court of claims under NIH. Your Honor, I mean, I guess I don't think this case is all that different from NIH. Your Honor, that's because... It's not all that, but I'm trying to figure out which part of this is it like. Is it like the vacating the guidance part, which can happen in district court, or is it like the adjudication of past grant terminations, which has to occur in the court of federal claims? There are no past grant terminations at issue here, so why isn't this just like the guidance part of NIH, which doesn't pose a jurisdictional problem and can happen in district court, even as to the portions of the injunction that cover things that are contract-like and therefore might implicate the Tucker Act? Your Honor, I think the only part of this case... Again, it's not a perfect analogy, but I think the only part of this case that even potentially looks like the first part of NIH you're discussing is the OMB memo, because, again, that is the guidance that the plaintiffs are pointing to, or we haven't contested that that's a final agency action. It's just that we think the claims against that memo have become moot because it was rescinded and it's not likely to be reinstated. Well, I'm afraid these are themselves final agency actions, and they're just mini-OMB directives to freeze funds at the agency level. How is it any different? That's what I'm not understanding. Sure, I mean, I guess I think... So this is one agency that was issued an APHA, right? So why wouldn't this be the same at each individual agency? You know what I mean? I guess, first of all, you know, obviously I sort of resist the premise because I don't think that these exist, but... Would you resist the purpose of understanding the jurisdictional point if you're wrong on the other point? Yeah, I mean, I think the reason, again, we have pressed this jurisdictional point mainly as with respect to a particular dispute because we thought with respect to that dispute it became more obvious... FEMA and FEMA? Yes, with respect to FEMA, because we thought in the context of that dispute it became clearer that what the district court was doing was saying, I'm enforcing this grant agreement and saying that you need to pay under the grant agreement. Let's leave them taking that one. I mean, we have a problem, which is jurisdiction we can't skip over. And you raise this jurisdictional point, and if the logic of it extends to everything that looks FEMA-like, we can't very well just ignore it. We're going to have to address it. So we're trying to get your help on how to address it outside the FEMA context. I mean, I think the right way for the court to address it is to say, look, the FEMA dispute showed that there was a problem, that it was ordering relief... And what we're asking you is, why, though, isn't the right answer, this is just like the guidance portion of NIH in which there's no Tucker Act problem? And, Your Honor, I mean, I guess I don't think it's like that because, again, in FEMA, it's not potentially because he actually orders some payment of funds as to a past cutoff. So maybe that's different. But the thing is, we're dealing with the enforcement of an existing injunction, which NIH wasn't addressing at all. After all, suppose in NIH, when they vacate the guidance, post the vacating the guidance, which a district court can do under NIH, the government just disregards that and starts withholding money based on the guidance. Couldn't you bring a motion to enforce action in district court? Are you saying that motion to enforce the vacator order, which validly issues in district court, has to go to the Court of Federal Claims? That can't be right. Your Honor, I mean, I think it's going to depend on the particular circumstances of what happened and what the claim is. I mean, what Justice Barrett recognized is that even if you can... And this court recognized this as well. Even if you can sort of vacate something that's further up the chain that's guidance, that doesn't necessarily mean that everything down the chain that was reliant on that guidance necessarily also has to be vacated. So I mean, I don't think it's sort of easy to kind of go through this. I mean, I think the point, the upshot here, is that the fact that the district court thought that its preliminary injunction covers the situation and allows the district court to specifically enforce grant terms against FEMA and say that I'm going to order a payment shows that the injunction covers things that it's not supposed to cover, namely contractual disputes that belong in the Court of Federal Claims. And we've raised it alongside arguments that other things that this injunction covers include situations where the agency is lawfully allowed to pause funding and situations where the agency has complete discretion about whether to pause funding. And that's exactly what the problem with this injunction is. So I think that all points up the problem that we've been discussing today about the National Wildlife Federation case and the Norton case, that here we don't have a final agency action that focuses the inquiry and imposes discipline on asking the question of what is or isn't unlawful and setting just that deficient agency action aside. Thank you. Any further questions? No. Thank you. Thank you, counsel. At this time, would counsel for the athletes please introduce yourself on the record to begin. May it please the Court, Judith Bale for the athletes' states. The district court properly found, based on an extensive factual record, that defendants acted arbitrarily, capriciously, and contrary to law when they categorically froze billions of dollars of federal assistance with essentially no warning and without even claiming that they had any statutory, regulatory, or other authority to do so. Because of these... Let's start by telling... In your view, what is the discrete agency action or actions that are the basis for the injunction that the injunction is relying on to enjoin the conduct? Absolutely, Your Honor. It's the OMB directive itself and then also each agency defendant's categorical decision to impose a categorical freeze across many different programs without doing any independent analysis of any particular statute. When you say the decision to freeze, do you mean to distinguish that from the resulting freeze just in the way that the OMB directive doesn't do anything other than direct? Well, I think the resulting freeze... There's a lot of evidence of the resulting freezes, and I think that reflects... That is evidence to reflect that each agency may put in place a discrete final agency action, which is the freeze. So some agencies... Maybe I can give a few examples. No, I don't need an example. It's a conceptual point. I just want to know whether the action is... OMB directive agency action. A separate action would be not sending you money. Without an OMB directive, you could just not send someone money. That would be an action. Correct. When you challenge the OMB directive, you're challenging something just like the guidance in NIH. With respect to the agency-level claims, are you saying they effectively had many directives? They made decisions to have categorical freezes. That's what we want to enjoy. That's independent of the millions of discrete agency actions that would be then taken in the wake of those directives at each agency, pot of money by pot of money. Yes, exactly. We are talking about for each agency, there was one high-level discrete decision, agency-wide, to put in place a categorical freeze across many, many different programs. Putting that policy... One last thing. With respect to the OMB directive, when you said that's a discrete agency action, the odd thing about that one is it was formally rescinded. As I understand the district court, it seems to treat that directive from OMB as remaining in place post the formal rescission of it. Is that your understanding? Yes, I think the district court did make that finding, and it did so based on evidence of the record, including the White House press secretary's own statement that while the OMB directive itself was rescinded, in response to litigation, they quote, it is not a rescission of the federal freeze, end quote. When you refer to the OMB directive, just so I get the nomenclature right, are you referring to the document or to the directive that lived on after the document? The directive that lived on after the document. And we do think the OMB directive is one agency action, and it continued even after its formal rescission. And then there are also each agency did its own discrete agency action. Now, it's really truly independent of the OMB directive. They were obviously connected. We see that in many places in the record. Several agencies sent communications specifically saying we are implementing a pause because of the directive or because of the executive orders that were themselves cited in the directive. There were other agencies that did not send a formal communication, but they instituted, they in fact instituted a pause. The portals were turned off. I'll just confirm. Can you let me know if I'm understanding correctly that that was how I understood your arguments. There's the OMB directive, which you contend lives on even after it's quote, unquote, rescinded. Then there are individual agency-wide decisions. And then below that, there are the actual implementation of the agency-wide decisions. So for the agencies that did not have documentary evidence that they had made that agency-wide decision to institute a categorical freeze, what evidence were you relying on to conclude that there was an agency-wide categorical freeze? Sure, Your Honor. It varies a little bit by agency, but an example would be for certain agencies, the entire payment portal was shut, was inaccessible, and that shuttering of the portal cut across many different kinds of programs, all run by the same agency because they all feed through the same portal. It is a circumstance. It is a circumstance, yeah. And based on the things that happened that appeared to be agency-wide, you are concluding that there was, in fact, an agency-wide decision. Correct. And I will say many of the agencies did send actual communications that were there, but for some of them, the circumstantial evidence that shows that there was an agency-wide decision are things like a portal being shut, or another example would be the payment accounts were just banished from the portal, or it would say suspended, and it would say suspended not for one individual grant, but for hundreds of grants across hundreds of millions of dollars. Are we going to find something like that or a more direct piece of evidence for every agency? You will find something like that for every agency except one. I will be candid. The only agency for which we don't have something that specific is the Small Business Association. That one, though, is listed on the OMB spreadsheet that went out, which has all of the defendants, including that one, and those were the programs that are supposed to be evaluated while the pause is in place. But other than that one, there is a declaration that has something specific about every defendant, and for many of these agencies, they were seeing this. It is not a coincidence that they were seeing this across the board over so many agencies, over so many grants. And so, especially at the time when we were first coming in for the TRO, but also by the time of the PI, the agencies were rightfully concerned that other kinds of federal assistance that plainly fall within the terms of the OMB directive would also get frozen, even if they maybe had not yet experienced it. And sometimes they might not have experienced it for a particular grant because there are different times when you actually go seek payment. So for some things, maybe there just hasn't been an attempt yet. So you take that to be a factual finding by the district court as to all those agencies about the existence of the discrete agency action that you're identifying? Correct, Your Honor. Do you understand your opponent to have challenged that on appeal as being clearly erroneous? Not really, Your Honor. And even if they did make that argument, which I don't think they did, the defendants put in no evidence to the contrary at the preliminary injunction stage. There's none. But even if there is no competing evidence, it could be clearly erroneous to say that the circumstantial evidence that was just too thin, and no one plausibly can do that dramatic a determination about illegal government conduct on that Senate record. Yes, that could be an argument, but I don't think it was made here. And to the extent we read them as impliably making it by saying it's just implausible that this happened, what do you say to that? The evidence reported in the district court's finding is overwhelming. There are many, many communications from different agencies saying we are instituting a pause because of the directive. There were many agencies that cut off the portals where we just couldn't even access them. They were gone. The evidence is overwhelming, and the timing of it is not, it is entirely within the district court's, you know, fact-finding discretion to reasonably conclude that the timing of it all at the same time, all right after the directive, and I will say, I think this has turned a little bit to mootness, many of these categorical freezes continued even after the formal rescission of the OMB directive. And so this case isn't moot because the voluntary cessation doctrine applies, but even more fundamentally, like even before that, the defendants never even actually ceased the conduct. They kept doing the freezes even after the rescission. Just to give an example or two, on February 5th, which is 7 days after the formal rescission, New York was still experiencing a freeze of more than $300 million in Department of Homeland Security grants, more than $500 million in Department of Transportation grants, and also more than $500 million in Department of Health block grants. And that's just one example among many. And again, this may be something that hasn't been raised by your opponent, in development and appeal, but assuming we have to address it. Just on this exact point, what do we do if in this period post-rescission of the OMB directive there are instances like you described where it seems like a freeze is still going on, but then there are other instances in which the portal opened again, which I assume happened. That's true, Your Honor. Given that mixed thing, in what sense then would it be plausible to say that the directive lived on? Because the directive was freeze everything, and yet post-rescission not everything is frozen. I have two responses to that, Your Honor. The first one is that it is true that some freezes started to lift, but that's because the district court issued a TLO, and then that TLO continued. Before the TLO was issued, what is the gap in time between rescission and the TLO issuing? It's a couple days, Your Honor. In that interim period, is anything opening up? I do know some things opened up, but it was mainly things that OMB backpedaled and said that was never supposed to be part of it. Medicaid is an example. Your view is there's nothing that opened up in that interim period that would cast doubt on the existence of the directive living on. Correct. That's correct. Some things opened up. Until the TRO. Correct, correct. And I think there is substantial evidence that it is the TRO itself that caused some things to lift. For example, the National Science Foundation sent a communication on February 2nd, which is after the TRO, saying that to comply with the district court's TRO, its approval would now be available starting at noon. It was not until February 6th, way after the TRO, that Illinois at least got some, not all, but some of the Inflation Reduction Act and Investment Jobs Act money suddenly reafforded the portal. So that stuff started happening after the TRO. And even after the OMB directive itself, we think the district court found that it continued even after the formal rescission, and that alone is enough to not make it move. But even if that was not the case, this is a classic example of voluntary cessation. We have the White House Press Secretary saying that the formal rescission happened in response to litigation. And we have to address the issue of is it likely to recur. Absolutely, Your Honor. And there is evidence that it is likely to recur. For example, if you look at the spreadsheet and instructions that OMB sent, which is in the record starting at A118, and then the spreadsheet goes on for quite a long time, those instructions say they wanted agencies to start doing this review while there was a pause. They wanted to get a first report of activities, funding activities through March 15th. And then it says OMB will follow up with additional deadlines for subsequent periods. That spreadsheet also made clear that the review was supposed to be not just for executive orders that had issued on January 20th, the first day of the administration, but also executive orders that came out afterwards. That's strong evidence that OMB intended this to keep going and that it formally rescinded it only because of the litigation and would be likely to do it again. I take it the likely to recur analysis is supposed to be likely to recur at the time the injunction is being issued, not today now that we're having the appeal on the injunction would be likely to recur. That's true. Well, I think that's definitely true for what the district court faced when it was doing it. I do think a case can become moot later, but we don't have that here by any means. I heard my colleagues on the other side say, oh, well, now some funds have actually been cut off at least based on purported statutory authority. But that doesn't moot out this case. What this PI does that remains extremely important for the plaintiff states is stop categorical freezes that are not actually based on any statutory or regulatory authority at all. The defendants absolutely can cut off funds based on at least purported authority. They've been doing that for months now. I think this court has seen some of those cases. But if this PI is lifted, what's to stop them from reimposing a categorical freeze for all of the funds that they have not managed to cut off? I understood the government. They say the reason for the categorical freeze, insofar as there was one which they denied existed at all, but insofar as there was one early days, that's a function of it being early days in an administration where they're trying to get their arms around things. Eight months, ten months, two years into the administration, they're not going to issue a categorical freeze to say, let's figure out what the president's priorities are and how it works. That's their claim. And either we have to evaluate that in doing the voluntary cessation analysis, or we don't. Doctrinally, is that a relevant point, or is the relevant point, at the time Judge McConnell was issuing the injunction, was it likely to recur within a foreseeable window? If now it's not, maybe that's a reason for it to be moot now, but that's a separate issue. Well, certainly they haven't raised the second argument ever to the district court, which they could try to do if they wanted to. I do think that what was happening in front of the district court at the time of the PI is the more salient point. I'm not trying to say that it's impossible for a case to become moot later, but it is a defendant's burden, especially in the voluntary cessation category, to show that it's absolutely clear that it wouldn't happen again. And they have not carried that burden. They haven't come close. But also, they put in no evidence here to suggest that the review that was happening is done, that there's no evidence to suggest that. There's no evidence to really suggest when the pause was supposed to stop. The OMB directive had no end date. The EPA's memo that was based on the unleashing executive order had no end date. The communications from the various defendants putting in pauses had no end date. And as I said, the spreadsheet and instructions from OMB contemplated an ongoing process. And I would also point the court on this point to the Supreme Court's decision in FBI v. Searc, which was the no-fly list case. And in that one, the government raised mootness, and the court said no because of voluntary cessation. And it acknowledged that the case had taken a while to get to the court and maybe time does move on, but that wasn't enough to overcome the heavy burden on voluntary cessation. Do you want to address any of that if we were to agree with you that the district court determined that it never ceased? Yes, I think that's right, because then we don't even need voluntary cessation. Do you want to turn to the jurisdiction arguments that government makes? Sure, absolutely, Your Honor. In this case and the entirety, all of the discrete agency actions fall squarely within what Justice Barrett talked about in terms of an agency-wide directive that is not based on any particular contract. So in the NIH order, Justice Barrett separated the world into agency decisions that are based on particular contracts or contract terms. In that case, it was the reinstatement of particular contracts. Those, she thought, at least preliminarily, should go to the Court of Claims. But by contract, agency policies or actions that apply sort of widely across the agency without regard to any particular contract belong in the district court under the APA. And that is exactly what we have here, Your Honor, because each agency instituted a categorical freeze that had nothing at all to do with any contract or any contract term. If you focus into the language of the district court's injunction, though, and I'm looking at page 44 of the appendix, does the language there concern you at all? You know, Justice Barrett speaks to the fact of grant terminations, charges to grant terminations, to be something that a district court would lack jurisdiction. Yeah, I mean, this language is not concerning, Your Honor. I mean, I think what the court was trying to do here was to say you need to stop the decision of the categorical freeze and that you need to stop that decision, sort of whatever it's applying to, because it could apply to, you know, it was applying to statutory formula grants, it was applying to lots of things, but the defendants didn't base their decision on any particular contract. That's sort of part of the fundamental problem that made their decision arbitrary and capricious and contrary to law to begin with. And there is nothing in this PI, and the district court was very clear, very clear, that this PI does not stop the defendants from actually analyzing particular statutes and grant terms. Let me just play this out so I understand. Because in NIH, the relief that was ordered was vacated, right? Correct. That was our final judgment. So you don't have a case, and each of these cases seems to be, I mean, it's by accretion that we're learning how the TUCRAC relates to these various types of claims. So the next one up would be, okay, Justice Barrett says it went to vacator. Just as you described, guidance can be vacated in the district court past termination of grants. Based on that guidance, relief from that, you've got to go to a court of claims. Can you order an injunction precluding a future termination? And the thing about that, which is what we have here, right, and the thing about that is there's kind of two pieces to that because implicit in that is where you can't have the guidance, you're enjoined from having guidance, that would be categorically freezing things. But it's also saying, and you can't terminate based on the guidance. And I guess maybe this is implicit in Judge Monacovo's question, doesn't that second piece of the injunction necessarily bring it into the danger zone under the TUCRA Act? I see what you're saying. Well, I mean, I think maybe before I get into the one word of getting to an actual termination, I think what this PI is really getting at, it's not an injunction that says you can't ever terminate a grant. That's just not what it's doing. It was mostly about it's focused on – You can't terminate it for a certain reason. And you can't freeze it. I mean, I do want to emphasize that this – We'll go to each word. Yes. Starting with terminate. It says you can't terminate it based on this directive. Right. If the termination had already occurred based on this directive, even though the reason you'd be objecting to the termination was arbitrary and capricious, it was categorical, I read NIH, that's still got to go to the Court of Claims. Well, I think we'd have a difference. We would have a difference here, and that's because of the categorical nature of what was going on here. So in NIH and also in the Department of Education stay order that came before it, you were talking about a specific program, and the Supreme Court thought this is really a fight about a specific grant, about a specific statute, grant, a specific thing that everyone could look at and fight over. Here, the categorical nature of the decision that was made, it has nothing to do with any grant. That's true of the guidance. That's the same with the guidance. Yes. No, that's the same. Then it goes on to say, and what you cannot do is terminate a grant. And the question is, can a district court say that piece of it, such that you're in contempt potentially if you terminate one, because by doing that, you take something that should be addressed in the Court of Claims and allow the district court to get control over it. What's the answer to that? I think the answer is the categorical nature of the decision here. And how that's responsive to the statute. Because the decision that was being made, the discrete agency action, is to freeze, stop doing anything, but without looking at any grant, without looking at any grant term. And so the court was saying, you can't carry that forward to terminating based on nothing. I think there would be a difference, I think there's a meaningful difference, if we were talking about a specific program and the defendants had actually said, we are invoking authority based on this particular. I want to look at the remedy piece and what the practical consequences of the remedy being an injunction that does this is, and whether there's anything to that relative acre. Maybe ask it this last way. Suppose all the district court did here was grant vacater, which you also had pled as one of your requested values. So what presumably vacated is the agency level decisions. Correct. So it wouldn't say a word about termination or pause or anything. It would just say, you can't vacate. What then would happen if post vacater, just like in NIH, post vacater of the guidance, the government relied on the guidance to terminate a grant. What happens? Is that a motion to enforce in district court or does that have to go under the Tucker Act to the court of claim? I certainly agree it would be a closer case, but I think if they terminated a grant based on that categorical rule, it would still go in the district court. So long as it's post the order vacating the guidance? Because if they did the same thing before the order vacating the guidance had come into place, under Barrett's opinion, I think it sounds like you've got to go to the court of claims to get redressed for that termination. I think the PI here is meant to sort of like go back to the status quo process and hold it that way so that we can then go forward and eventually get to vacater if we prevail. So maybe another way to get at this is to say the preliminary injunction says freeze, stop with the freeze, stop doing that agency-wide thing that you're doing and go back to the status quo process. Now it is true that as a natural consequence of that, the status quo process that existed before was that reimbursements would flow, not immediately, but at a relatively quick pace. But Bowen and other cases are clear that the fact that a natural consequence might be payment on a grant does not get into the CHOPPER Act. But here you see you're in contempt if you don't unpause something. Yes, that is correct. In theory, you would be in contempt if you don't unpause it. But under NIH you never reached that problem precisely because all that happened was the guidance was vacated. And so nothing follows from that. Here, based into the release, is this additional consequence, which by its nature implicates a particular contract. That's the thing that's concerning me. Well, I guess I want to emphasize that if the one word about terminating contracts is bothering the court, I don't think that that is really particularly important to this PI. No, and that I strongly disagree with. Because there is a big difference between a categorical. Under the PI, if you keep doing a categorical pause without any analysis of any particular program, that violates the PI. The defendants are allowed, and they definitely understand the difference, between actually looking at particular programs and doing a pause based on actual authority. That's a merits point. That doesn't respond to the Tucker ad point that's concerning me, which is vacating or enjoining them from having a decision to institute a categorical freeze is different than actually freezing. That's where we started this argument about 25 minutes ago, right? They're just different things. That seemed important to Justice Barrett's opinion in NIH in explaining why the vacated there caused no Tucker Act problems. I understand the question, but I guess I'm not sure that I agree that it was the posture, that it was the final decanter versus the preliminary that was key to what Justice Barrett was saying. I think the key to what Justice Barrett was saying was, is the decision that's being challenged and the judgment, the court's order, is it focused on something that is based on a contract, or is it not? And based on a contract, she thought that reinstituting grants, I think whether it was done at final judgment or if you had a preliminary injunction that said, while this litigation is going on, you have to reinstitute particular grants where the challenged action had to do with particular grants, I think she would think that would go under the Tucker Act. But here, the free decisions, the PI and defendant's actions, none of it is based on any particular contract because the defendants didn't look at any particular contract. Counselor, can I ask you how you understand the federal government's argument, which when I read the briefs, it's a jurisdictional argument and we've been trying to understand exactly what is within the scope of it in lots of different ways, but they raise it as to the FEMA part of the order. Just earlier, you heard the federal government say that's where it's crystallized and it's focused on that part of the case. What's your response? How do you understand their argument as it relates to the various funding streams that are represented here, which are numerous? I mean, this argument didn't appear in the district court proceedings until the FEMA part. So I think we initially understood it as only being based on FEMA. It was only on appeal that they did try to spread it out a little bit, and I think they're trying to make an argument that FEMA is somehow an example of why there's a jurisdictional argument across the board, but that just doesn't work. I think I'll put FEMA aside for one second, and then I'll explain why they're wrong as to FEMA. But as for all the other agency decisions, they are plainly categorical in nature. They plainly apply without any basis in any statute, regulation, or contract. I mean, as we said before, the communications from the various defendants invoked the directive or the executive orders. They never invoked any contract itself. They never invoked any statute or regulation. And the actions that they took without formal communications, it just happened. The poll was turned off for hundreds and hundreds of grants, and it's just not plausible that any agency actually did any analysis of particular grant terms or statutes, given that the freeze started going into effect less than 24 hours after the OMB directive was issued. As to the FEMA point, I take the government to be trying to make a slightly different point, which is to say that, oh, there, there was discussion of the CFR, so that's different. But the district court found, as a matter of fact, that the FEMA pause, it started as a categorical pause when the DHS secretary said that there was going to be a pause, and that that pause continued, and that calling it a manual review was just a new label for the same categorical pause that had existed the whole time. That was a factual finding. It is not clearly erroneous. It is based on the timeline that we have the DHS secretary saying there's going to be a pause. We have on February, as early as February 2nd, which is before the manual review language, we have states starting to experience categorical freezes from FEMA. We then have a communication from FEMA saying, put whole towels on all your awards, put financial holds on all of your awards. And then it's only the next day that there's another communication saying, let's not call it a hold because that sounds like it contravenes the TRO. Now it's a manual review process. And then that manual review process label, there was like a post hoc search to try to find something that could justify it. First it was CFR principles and inherent authority. Then it was a 30-day provision that doesn't even apply to the states. And anyway, the FEMA categorical freezes lasted well past 30 days. So the district court made a factual finding that that was just a relabeling of the same categorical freeze that had been prohibited by the PI all along. Do you know if there are cases involving motions to enforce orders to vacate agency guidance? I mean, I know there were some issues with that in the recent SNAP case, but I can't say that I'm familiar with that, so I don't really want to go into it. I do think that a motion... It seems to me the order to vacate would be empty if you couldn't have a motion to enforce if they kept it in place. And the way you would prove they kept it in place wouldn't be just, it's still on the website, it's bothering me. You would probably prove they kept it in place by relying on it to do something bad to you. And so in that context, I wonder if it just follows logically from NIH analysis that some contract-specific remedies can be happening in district court so long as they're in the form of enforcing the permissible action with respect to the guidance that could start in district court. I agree with that, Your Honor. I think a vacater would be an empty exercise if they could just keep going forward. I think we also requested permanent injunctive relief, so that's something that might, in a different case, be instituted at the same time as a vacater and would create the same paradigm. And I think what matters the most would be, I mean, I think that the defining feature in NIH and the Department of Commerce case is that you were talking about an order that was ordering the re-institution of particular grants that had already been canceled. And that support viewed as something that was based on a contract and looking for a remedy that was very based in contract. We don't have that here. We don't have that here. We have left an agency-wide decision and go back to the prior process that you were doing before. And they can, and I want to emphasize again, they can do actual authority. I just have one thing. This goes back to the merits. Prior to the OMB directive, there's the unleashing EOs in place. Do I have my timing right? Yes, that is correct. There was a suggestion by your opponent that with respect to the non-formula grant things that the unleashing executive order operated on, there is no basis for concluding that there was a categorical freeze at that point. And in any event, it couldn't have been based on the OMB directive because it preceded the OMB directive. So do you want to just address that and in particular the fact that the OMB, the unleashing EO had in it the language of I think to the extent permitted by law? Sure, Your Honor. I think the language both in that executive order and it reoccurred in the OMB directive doesn't help the defendants here because that's not what happened. The defendants both before, you know, both right after the EO itself and after the directive, it is not plausible and there is no evidence to suggest that any defendant actually evaluated any grant. And so the reliance on, you know, finding a particular grant that had some discretion, that's post hoc rationalization that certainly doesn't help on an arbitrary and capricious claim. And it also doesn't help on the contrary to law claim because the problem, the sort of fundamental contrary to law problem here is that the agency does not have any statutory authority to enact a categorical freeze that has nothing to do with any particular statute or any particular reg. And the discretionary, you know, they point to discretion in certain statutes, but that's not the discretion that any agency was actually exercising. Thank you. Thank you. Thank you. Thank you, counsel. At this time would counsel for the government please reintroduce himself on the record. He has a three-minute rebuttal. Thank you, Your Honors. Brian Springer for the federal government. I'd just like to make a couple of quick points. First of all, my friend on the other side I think said that there is one, you know, agency-level decision at each of these agencies to pause all funding without examining the authorities that the agencies have and I just don't see them actually pointing to where those are in the record and I don't see that the district court has ever found one. I think they're just resting on the idea that they think it's implausible that the agencies did this analysis. But, of course, the agencies have, you know, people who are devoted to grant making and know these programs backwards and forwards and they've made a lot of decisions with OMB both before and after the pause was supposed to take effect. I'd also just like to turn, I think, to the point about the relief that was entered in this case. And, again, I think one thing that's important to notice is that the district court's injunction has a piece that's directed to the OMB memo, but then it also goes on and as, you know, we were discussing this afternoon, it has a bunch of terms that it uses including pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of federal funds based on a memo or based on a series of executive orders. And I think that goes outside what the district court was supposed to do both as a matter of, as we've discussed today, the final agency action problem, but also for the, you know, the many problems that we've identified, which is that this injunction covers things that the agencies are lawfully allowed to do, that are committed to the agency's discretion, and that exceed the district court's jurisdiction because the district court. Why do those words take it beyond its jurisdiction? I take it you're referring there to the Tucker Act. Yes, John, I mean, again, it would only be as to some of the funds because some of the funds aren't contract relationships at all. You're conceding that, I take it. That's correct, Your Honor. Some of this is statutory. If there's anything that is contract related, you would say that you're suggesting that there's a Tucker Act problem with that aspect of the injunction? Your Honor, to the extent that the district court's injunction covers, which I think the FEMA dispute suggests that it does, a situation in which we're talking about the only source of the payment to the plaintiffs is a grant agreement, and the court, in effect, is saying under that grant agreement, you're not allowed to freeze, you're not allowed to terminate. Why isn't it right to say that that's just a going forward prohibition against that categorical ground for doing any of those things as to any grant, but I'm not saying there is such a grant or that I care that there's such a grant? Obviously they have standing based on the grant, but we know from Justice Barrett's opinion that's not enough to make it subject to the Tucker Act, and that form of relief, that is just no different than vacating the guidance. It's not saying anything different, or are you saying it is doing more than just vacating the guidance? Your Honor, I think it probably is. I mean, I guess a couple of responses on that. I mean, I think, first of all, the FEMA dispute suggests that it's going beyond just enjoining some particular law. That's more than the instance in which it's enforcing a violation of the injunction. I'm interested in the prior question of is the injunction itself creating a Tucker Act problem. Nothing about what happens about enforcing the injunction can answer that question. I mean, I think it does in part because that means the injunction covers that conduct. No, the injunction covers parts of funds that are subject to grants. That's not, I mean, that's just on the face of it. The question is, just like the guidance covered grants in NIH, that doesn't make it subject to only court of claims can issue the vacator. So the relevant question is, how is this injunction different than the vacator of the guidance? Your Honor, I mean, again, I think this injunction looks very different. And, again, it looks, even in its own terms, it looks very different because the first part of it says, I am enjoining a reimplementation of the OMB memo. And, again, we don't think that that injunction should have been entered at all, but you would suspect that the next part of it would also say, I'm enjoining these high-level decisions that these agencies made. And, instead, it describes a sort of conduct that it thinks that the agencies may have been engaged in and enjoins them from doing that kind of thing. And, as we've mentioned, it's had practical problems on the ground, including in the context of the FEMA dispute. Thank you. Thank you, Your Honors. Thank you, Counsel. That concludes our argument. All rise.